IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

vs.                          Case Nos.:    4:17cv234/MW/GRJ
                                           4:15cr48/MW/GRJ-7

DARIA PATRICE SIMMONS

---

## **REPORT AND RECOMMENDATION**

This matter is before the Court upon Petitioner's "Motion under 28

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a person in

Federal Custody" (ECF No. 291), and the Government's Response. (ECF

No. 305). The case was referred to the undersigned for the issuance of all

preliminary orders and any recommendations to the district court regarding

dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b)

and FED. R. CIV. P. 72(b). After a review of the record and the arguments

presented, the Court concludes that Petitioner has not raised any issue

requiring an evidentiary hearing and that the § 2255 Motion should be

denied. *See* Rules 8(a) and (b) Governing Section 2255 Cases.

## I.  BACKGROUND

On November 3, 2015, a federal grand jury returned a fourteen-count

indictment charging Petitioner and nine co-defendants with crimes arising

from their participation in a tax-fraud scheme and a scheme involving fraudulent Supplemental Nutrition Assistance Program ("SNAP") applications. (ECF No. 1.) Count One charged Petitioner with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 1349; Count Ten charged Petitioner with Theft of Government Funds, Aiding and Abetting, in violation of 18 U.S.C. §§ 641 and 2; and Count Eleven charged Petitioner with Aggravated Identity Theft, Aiding and Abetting, in violation of 18 U.S.C. §§ 1028A(a)(1) and 2. Attorney Eric Milles was appointed to represent Petitioner. (ECF No. 63.)

On February 3, 2016, Petitioner pleaded guilty pursuant to a plea-bargain agreement. (ECF No. 137.) Thereafter, a United States Probation Officer prepared a Pre-Sentence Investigation Report ("PSR"). (ECF No. 208.) The PSR assessed a base offense level of 7 pursuant to U.S.S.G. § 2B1.1(a). *Id.* at ¶ 82. The PSR added eighteen levels based on an intended loss of $8,666,380 and an actual loss of $1,695,252, and two levels because the offense involved ten or more victims. *Id.* at ¶¶ 83, 84. After adjusting downward three levels for acceptance of responsibility, Petitioner's total offense level was 24. *Id.* at ¶¶ 90, 91, & 92.

Count One carried a statutory maximum term of imprisonment of twenty years pursuant to 18 U.S.C. § 1343. *Id.* at ¶ 122. The maximum term of imprisonment as to Count Ten was ten years, pursuant to 18 U.S.C. § 641. *Id.* The minimum term of imprisonment as to Count Eleven was two years, and the maximum term was also two years, pursuant to 18 U.S.C. § 1028A(a)(1). *Id.* Based upon a total offense level of 24 and a criminal history category of I, the Guideline imprisonment range as to Counts One and Ten was fifty-one months to sixty-three months. *Id.* at ¶ 124. As to Count Eleven, the Guideline sentence was the minimum term of imprisonment required by statute, which is twenty-four months consecutive to any other count of conviction, pursuant to U.S.S.G. § 2B1.6. *Id.*

On May 26, 2016, United States District Judge Mark E. Walker sentenced Petitioner to sixty-five months of imprisonment, consisting of forty-one months as to Counts One and Ten, concurrent to each other, and twenty-four months as to Count Eleven, consecutive to Counts One and Ten; a three-year term of supervised release as to Counts One and Ten, and one year as to Count Eleven, all counts to run concurrently; restitution in the amount of $2,695,253; and a Special Monetary Assessment of $300.

(ECF No. 222.) Petitioner did not appeal her conviction and sentence to the

Eleventh Circuit Court of Appeals.

On April 29, 2017, Petitioner executed the instant § 2255 Motion,

asserting the following grounds for relief:

1) Counsel was constitutionally ineffective for failing to file an appeal as directed;

2) Counsel was constitutionally ineffective for forcing Petitioner into an involuntary guilty plea; and

3) Counsel was constitutionally ineffective for allowing Petitioner's sentence to be "overly enhanced."[1]

(ECF No. 291.)

## II.   DISCUSSION

### A. General Legal Standard

Collateral review is not a substitute for direct appeal, and therefore

the grounds for collateral attack on final judgments pursuant to Section

2255 are extremely limited. A prisoner is entitled to relief under Section

2255 if the court imposed a sentence that: (1) violated the Constitution or

---

[1] Petitioner also asserts in "Ground Four" that counsel was ineffective for forcing Petitioner to plead guilty to charges that overly stated the amount of money she was actually responsible for, and counsel refused to appeal upon Petitioner's request. Because Ground Four is, in essence, a reassertion of Grounds One through Three, the Court will not address it as an individual ground for relief.

Case Nos.: 4:15cr48/MW/GRJ-7; 4:17cv234/MW/GRJ

laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a Section 2255 motion which have been resolved on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided

adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under Section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under Section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a Section 2255 motion and will be considered procedurally barred. *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a Section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice

resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016). In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529

U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013). In applying *Strickland*, a court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir.

1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315. "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness." *Chandler*, 218 F.3d at 1314. When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, a defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*, 466 U.S.

at 693). For a court to focus merely on "outcome determination," however,

is insufficient; "[t]o set aside a conviction or sentence solely because the

outcome would have been different but for counsel's error may grant the

defendant a windfall to which the law does not entitle him." *Lockhart v.*

*Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*,

611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish

"that counsel's errors were so serious as to deprive the defendant of a fair

trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting

*Strickland*, 466 U.S. at 687).

To establish ineffective assistance, Defendant must provide factual

support for his contentions regarding counsel's performance. *Smith v.*

*White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory

allegations of ineffective assistance are insufficient to satisfy the *Strickland*

test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34

(11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir.

2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson*

*v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941

F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899

(11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving

defendant has a high hurdle to overcome to establish a violation of his

constitutional rights based on his attorney's performance. A defendant's

belief that a certain course of action that counsel failed to take might have

helped his case does not direct a finding that counsel was *constitutionally*

*ineffective* under the standards set forth above.

### B. Ground One

Petitioner's Ground One alleges counsel was ineffective for failing to

file an appeal as directed.

In *Roe v. Flores-Ortega*, the Supreme Court held that the two-prong

test from *Strickland* applies to ineffective assistance of counsel claims

based on counsel's failure to file a notice of appeal. 528 U.S. 470, 477

(2000). The *Roe* Court further declared that "a lawyer who disregards

specific instructions from the defendant to file a notice of appeal acts in a

manner that is professionally unreasonable." *Id.* at 477 (citation omitted).

The Eleventh Circuit Court of Appeals has interpreted *Roe* to mean that it is

*per se* unreasonable to fail to follow a client's explicit request to file an

appeal. *King v. United States*, 250 F. App'x 930, 932 (11th Cir. 2007), citing

*Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005). Thus,

when counsel ignores a defendant's request to appeal, the court should grant the motion to vacate and the defendant should be permitted to file a belated appeal without any further showing. *See McIver v. United States*, 307 F.3d 1327, 1330 n. 1 (11th Cir. 2002).

Often times, the conclusion that counsel ignored a defendant's instructions to file an appeal must be made after an evidentiary hearing. Pursuant to § 2255, "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b) (emphasis added). "[I]f the petitioner alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim." *Aron v. United States,* 291 F.3d 708, 715 (11th Cir. 2002) (citations and internal quotation omitted). "The law is clear that, in order to be entitled to an evidentiary hearing, a petitioner need only *allege*-not prove-reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Id.* at 715 n. 6 (emphasis in original).

Case Nos.: 4:15cr48/MW/GRJ-7; 4:17cv234/MW/GRJ

However, "[a] hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir.1989) (citation omitted); *see also Lynn v. United States*, 365 F.3d 1225, 1238-39 (11th Cir. 2004) (holding that district court was not required to hold an evidentiary hearing based on § 2255 petitioner's mere conclusory allegations in his affidavit), citing *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (A § 2254 petitioner is not entitled to an evidentiary hearing if his claims "are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible") (internal quotations and citations omitted).

Petitioner's Ground One, in its entirety, is reproduced as follows: "Petitioner requested counsel to pursue a direct appeal on the day of sentencing. Counsel never did so, upon the Petitioner's request." (ECF No. 291 at 4.) Petitioner does not expound upon her claims in the Petition, nor did she file an accompanying memorandum in support of her Petition.

In its Response to the Petition, the Government submitted a letter

written by Petitioner's attorney, Mr. Milles. (ECF Nos. 305 & 305-1.) In the

letter, Mr. Milles asserts he consulted with Petitioner immediately after

Judge Walker imposed her sentence on May 26, 2016, and she did not

wish for him to file a notice of appeal. (ECF No. 305-1.) Mr. Milles further

states he confirmed the conversation in an email the next day. *Id.* The

email, attached as Exhibit A to his letter, is date-stamped May 27, 2016, at

10:48 a.m. The email states, in relevant part:

> I am writing to confirm our discussion after the sentencing hearing
> yesterday wherein you elected to not file an appeal related to your
> Sentence by Judge walker. Pursuant to the Federal Rules of
> Appellate Procedure 4(b), if you had wanted to appeal, a notice of an
> appeal would need to be filed within 14 days of the entry of the
> judgment being appealed. In light of your decision, I will not take any
> further action related to this matter and my representation.

*Id.*, Ex. A. Petitioner did not file a Reply to the Government's Response, nor

did she contest Mr. Milles' letter or the contents of the email.

On October 12, 2017, this Court entered an order requiring Petitioner,

within thirty days, to set forth, in as much detail as possible, and under

penalty of perjury, all discussions (and attempted discussions) she had with

counsel regarding an appeal and any witnesses to these conversations, if

any. (ECF No. 311.) The Court further ordered Petitioner to explain what

action she took, if any, upon receiving counsel's email memorializing his belief that she did not want to file an appeal and how and when she learned that counsel had not filed an appeal as requested. The Court further admonished Petitioner that failure to respond to the order may be construed as abandonment of her claims. As of the entry of this report and recommendation, Petitioner has not responded to the Court's order and has failed to provide any specificity to her conclusory assertion that she told her lawyer to file an appeal.

Under the circumstances of this case, the Court has no difficulty concluding that Petitioner's bare assertion that counsel failed to file an appeal as directed falls well short of establishing entitlement to an evidentiary hearing. Petitioner provides no supporting details regarding the conversation she had with counsel about her right to appeal following sentencing, nor does she identify any witnesses to the conversation. More notably, Petitioner's conclusory assertion is affirmatively contradicted by the email evidence—to which Petitioner did not object—demonstrating that Petitioner and Mr. Milles agreed not to pursue an appeal.

In an abundance of caution and to afford Petitioner with an

Case Nos.: 4:15cr48/MW/GRJ-7; 4:17cv234/MW/GRJ

opportunity to provide factual support for her assertion that she told counsel

to file an appeal, this Court issued an order requiring Petitioner to provide

details under oath regarding her request to counsel to file an appeal. The

Court advised Petitioner in the order that her failure to respond may result

in the dismissal of her motion. Nevertheless---and even though Petitioner

has had more than seven months to prepare and file a response--- she

failed to file anything further. Petitioner, therefore, has failed to allege

reasonably specific, non-conclusory facts that, if true, would entitle her to

relief. Moreover, in taking Petitioner's unsupported allegations in the face of

the record, the Court finds they are wholly incredible. For these reasons, no

evidentiary hearing is warranted, and Petitioner has failed to demonstrate

deficient performance or prejudice under *Strickland* as to Ground One.

### C. Ground Two

Petitioner's Ground Two alleges counsel was ineffective for forcing

her into an involuntary guilty plea.

The two-prong *Strickland* test applies to challenges of guilty pleas

based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58

(1985). However, "counsel owes a lesser duty to a client who pleads guilty

than to one who decided to go to trial, and in the former case counsel need

only provide his client with an understanding of the law in relation to the

facts, so that the accused may make an informed and conscious choice

between accepting the prosecution's offer and going to trial." *Wofford v.*

*Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) (citation omitted). A

guilty plea is considered knowing and voluntary if: 1) the guilty plea is not

coerced; 2) the defendant understands the nature of the charges; and 3)

the defendant knows and understands the possible consequences of the

guilty plea. *United States v. Darville*, 423 F. App'x 939, 941 (11th Cir.

2011), citing *United States v. Mosley*, 173 F.3d 1318, 1322 (11th Cir.

1999). In the guilty-plea context, the first prong of *Strickland* requires the

defendant to show her plea was not voluntary because she received advice

from counsel that was not within the range of competence demanded of

attorneys in criminal cases. *Hill*, 474 U.S. at 56-59. To prove prejudice in

the context of a guilty plea, a defendant must show a reasonable probability

that, but for her attorney's errors, she would not have pleaded guilty and

would have insisted on going to trial. *Id.* at 59.

Petitioner's conclusory allegations of ineffective assistance of counsel

are insufficient to warrant relief. Petitioner alleges she "was a first offender and was not responsible for the amount of money that she was involuntarily coerced into pleading guilty to" and, as a result, "was overly sentenced for over the amount she was actually responsible for." (ECF No. 291 at 5.)

Petitioner alleges no facts suggesting that her attorney's conduct, advice, or representation undermined the knowing and voluntary nature of her guilty plea. Nor does she allege specific facts demonstrating counsel made any promises or representations to her or threatened or coerced her into pleading guilty. Nor does she allege that she was uninformed of the nature of the charges or the possible consequences of the guilty plea.

It is unclear from Petitioner's Motion what "amount of money" to which Petitioner makes reference. As a specific condition of her plea-bargain agreement, Petitioner agreed to pay full restitution to the Internal Revenue Service in the amount of $2,695,253. Petitioner does not explain why this figure is excessive or in what way she was coerced into agreeing to pay it.

Post-plea, the United States Probation Office filed a PSR that applied an eighteen-level upward adjustment because the offense involved

an intended loss of $8,666,380 and an actual loss of $1,695,252. However, because at the time Petitioner entered into the guilty plea the intended loss figure was not yet calculated Petitioner did not, as she suggests, "plead guilty" to this specific sum of money. Thus, it is unclear from her Motion what "amount of money" Petitioner says she was coerced into pleading guilty to. And the fact that the Court is left to guess only highlights the bare and conclusory nature of Petitioner's allegations.

Not only are Petitioner's allegations of an involuntary guilty plea conclusory, they are completely at odds with the evidence in the record. Petitioner signed a plea-bargain agreement in which she attested to pleading guilty knowingly, voluntarily, and upon the advice of counsel. (ECF No. 137 at 6.) Further, during her Rule 11 plea colloquy, Petitioner testified under oath her understanding of the charges and maximum penalties and the Sentencing Guidelines. (ECF No. 297 at 13-18, 20, 25-26.) She denied any promises or coercion on the part of counsel and confirmed her satisfaction with counsel's representation. *Id.* at 3, 19. She admitted to the factual basis proffered by the Government. *Id.* at 33-38. She acknowledged that she could be held responsible in restitution jointly and severally for the

entire amount that was reasonably foreseeable from the conspiracy. *Id.* at

21-22. Petitioner further acknowledged that her Guidelines Sentence

calculation could be affected by the amount of money involved in the

offense. The Court's colloquy includes the following exchange:

> THE COURT: Do you understand your offense level can
> move up and down depending on the facts of the case? We start
> with an offense level based on your charges, and they can go
> down -- for example, we subtract three levels for you entering
> a plea, assuming you get all three points, you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: But they can also go up, the offense
> level, on things like your role in the offense, if you were an
> organizer or planner or a leader. It can also go up the more
> money that's involved in a financial crime. Do you understand
> that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: So do you have any questions about how
> that works, that process?
>
> THE DEFENDANT: No, sir.

*Id.* at 29. "[T]he representations of the defendant, h[er] lawyer, and the

prosecutor at [a plea] hearing, as well as any findings made by the judge

accepting the plea, constitute a formidable barrier in any subsequent

collateral proceedings." *Blackledge*, 431 U.S. at 73-74. Solemn

declarations in open court carry a strong presumption of verity. *Id.* at 74.

Here, Petitioner's solemn declarations in open court, taken together with the representations she made in the signed plea-bargain agreement, contradict her unsupported, self-serving allegation that counsel forced her into an involuntary guilty. Thus, Petitioner's claim of ineffective assistance is without factual or legal support, and Petitioner fails to overcome the record evidence demonstrating that counsel rendered constitutionally adequate assistance and that her guilty plea was knowing and voluntary. Accordingly, Petitioner fails to carry her burden under *Strickland* as to Ground Two.

### D. Ground Three

In her final ground for relief, Petitioner asserts counsel was ineffective for "allowing her to be overly enhanced, especially to an amount that Petitioner was not responsible for, yet coerced into an involuntary plea." (ECF No. 291.) As a preliminary matter, as discussed above in the previous section, Petitioner entered a knowing and voluntary guilty plea. Therefore, the Court will only address whether counsel allowed Petitioner's sentence to be "overly enhanced."

Case Nos.: 4:15cr48/MW/GRJ-7; 4:17cv234/MW/GRJ

Based on her participation in the tax-fraud scheme, the draft PSR attributed to Petitioner an intended loss of $8,666,380, of which $1,695,252 was actually issued by the Internal Revenue Service. (ECF No. 183 at ¶ 68.) The draft PSR further found that the SNAP-benefits fraud involved 165 applications that claimed $176,704, of which $3,357.88 was actually issued by the Department of Children and Families. *Id.* Therefore, the draft PSR found that the total intended loss attributable to Petitioner was $8,843,084, and the actual loss was $1,698,609.88. *Id.*

Counsel filed written objections to the draft PSR, in which he challenged the losses attributed to Petitioner. (ECF No. 208 at ¶ 145.) Counsel argued that the loss for which Petitioner should be held accountable arising from the tax-fraud scheme is $250,000, and further objected to any characterization of Petitioner being involved in the SNAP benefits fraud. *Id.*

In response to counsel's objections, the probation officer countered that the loss attributed to Petitioner arising from the tax-fraud scheme was supported by evidence that, from very early on in the conspiracy, Petitioner acted as her brother's personal banker by depositing the fraudulent

proceeds procured from the IRS scheme into various accounts. *Id.* at ¶
146. Based on that evidence, the probation officer found that Petitioner's
role was not overstated with respect to the tax fraud, and there was no
basis in evidence to attribute a lesser amount of $250,000. *Id.*

As a result of counsel's advocacy, however, the probation officer did
remove any suggestion of Petitioner's responsibility in the SNAP benefits
fraud and revised the loss amounts to only include losses associated with
the tax fraud in the final PSR. *Id.* at ¶ 147. The final PSR revised and
lowered the loss amount to an intended loss of $8,666,380 and an actual
loss of $1,695,252. (ECF No. 208 at ¶ 83.)

At sentencing, counsel informed the Court that he wished to withdraw
the objection to the loss amounts attributable to Petitioner. The Court then
advised Petitioner as follows:

> THE COURT: . . . Your lawyer said, in essence, Judge, we're
> withdrawing those objections, we no longer challenge the amount of
> loss or the restitution. Did you hear him say that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Have you discussed that decision with him?
>
> THE DEFENDANT: Yes.

THE COURT: Are you in agreement with that decision?

THE DEFENDANT: Yes.

THE COURT: All right. Has anybody threatened you,
coerced you, or pressured you in any way to get you to withdraw
those objections?

THE DEFENDANT: No.

THE COURT: Have you done so of your own free will?

THE DEFENDANT: Yes.

THE COURT: Have I done or said anything to suggest
you need to withdraw those objections?

THE DEFENDANT: No.

(ECF No. 302 at 7.) Although in Ground Three, Petitioner asserts---in

conclusory fashion---that counsel was ineffective for "allowing" her

sentence to be overly enhanced, Petitioner fails to allege what, specifically,

counsel affirmatively did or failed to do that resulted in an enhanced

sentence.

The record reflects that counsel successfully challenged the total loss

calculations in the draft PSR, which resulted in a reduced loss figure in the

final PSR. The record does reflect that counsel abandoned further

objections to the loss amount at sentencing, but nothing in the record

Case Nos.: 4:15cr48/MW/GRJ-7; 4:17cv234/MW/GRJ

suggests this was the product of ineffective assistance.

Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). Where the record is incomplete or unclear about counsel's actions, it is presumed that counsel exercised reasonable professional judgment, so long as there is a conceivable, strategic reason for counsel's actions. *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000), citing *United States v. Fortson*, 194 F.3d 730, 736 (6th Cir. 1999) (determining—without district court findings or even evidentiary hearing—that defendant had not overcome presumption of effective assistance because court "[could] conceive of numerous reasonable strategic motives" for counsel's actions at trial).

It is unclear from the record why counsel chose to abandon the objection to the loss amount at sentencing, but the Court can conceive of at least one strategic reason for doing so: the evidence of Petitioner's role as her brother and co-conspirator's personal banker fully supported the loss

amount attributed to her, and any further objection to the loss amount would have been futile. Regardless of counsel's actual motives, under the applicable standard, the Court presumes that counsel exercised reasonable professional judgment, and Petitioner has failed to overcome that presumption.

What the record does make clear is that Petitioner understood, upon entering a guilty plea, that her base offense level was subject to increase based on the amount of money involved in the enterprise. The record further demonstrates that Petitioner told the Court at sentencing that she was in agreement with counsel's decision to withdraw the objection and was not forced or coerced into doing so. Petitioner's allegation that counsel's purported ineffectiveness allowed her sentence to be "overly enhanced" finds no support in the record. Petitioner's Ground Three thus warrants no relief.

## III. CONCLUSION

For all of the foregoing reasons, the Court concludes that Petitioner has not shown that she is entitled to § 2255 relief. Therefore, Petitioner's Motion should be denied.

Case Nos.: 4:15cr48/MW/GRJ-7; 4:17cv234/MW/GRJ

# CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Case Nos.: 4:15cr48/MW/GRJ-7; 4:17cv234/MW/GRJ

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1.    The "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or

       Correct Sentence by a person in Federal Custody" (ECF No.

       291) should be **DENIED**.

2.    A certificate of appealability should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 6th day of June, 2018.

*/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge


**NOTICE TO THE PARTIES**

       Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

Case Nos.: 4:15cr48/MW/GRJ-7; 4:17cv234/MW/GRJ